IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FLORENCE HOUCKS,

          Plaintiff,

          vs.                                Case No. 07-2124-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

          Defendants.

MEMORANDUM AND ORDER

      Plaintiff Florence Houcks has applied for Social Security disability benefits.  Her application was partially granted by the ALJ on January 6, 2003. After an initial remand by the Appeals Council, the ALJ denied benefits for Houcks for the period prior to January 6, 2003.  On February 23, 2007, the Appeals Council affirmed the ALJ's decision.  There are two allegations of error by Houcks. First, that the ALJ improperly discounted the testimony of a treating physician. Second, that the ALJ erred in failing to determine that her mental impairments were not severe prior to January 6, 2003.

      Plaintiff-claimant was born on July 25, 1961. She has stated that she became disabled beginning June 22, 2001.  She has a high school education and two years of college.  She has previously worked as a customer service representative, a timekeeper, a data entry clerk, and a database coordinator.  Houcks was hospitalized for a month when she had a brain aneurysm in

October of 1995 as a result of hypertension.  She claims a variety of ailments, including chronic and severe headaches, uncontrolled hypertension, fibromyalgia, cervical and thoracic strains, and stress. The detailed facts of the case, which are incorporated herein, appear in the ALJ's opinion, Houcks's brief (Dkt. No. 9, at 2-15), and are set forth *seriatim* in the argument section of the Commissioner's response (Dkt. No. 12, at 4-13).

The Commissioner must use a five-step process in assessing disability claims. *See* 20 C.F.R. § 404.1520 (2005). First, the ALJ must determine whether a claimant is engaged in substantial gainful activity.  Second, whether he has a medically determinable impairment that is "severe" under the meaning of the Act. Third, whether the claimant suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, can the claimant return to his past relevant work.  If not, can the claimant perform work existing in significant numbers in the national economy.  At this step, the burden of proof is on the Commissioner, who may rely on the medical-vocational guidelines (guidelines) or vocational expert testimony.

As noted earlier, the ALJ determined that Houcks became disabled January 6, 2003. The ALJ found that, after this date,  Houcks met the listing for affective disorder found at 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.  Before the disability date, Houcks suffered from an impairment which prevented her from performing her old work, but retained the RFC to perform other work in the national economy.

Houcks contends that this determination is not supported by substantial evidence.  In particular, she alleges that the ALJ improperly discounted the opinion of Stacy Younger, M.D., as well as psychiatrists Rebecca Merritt, M.D., and Konoy Mandel, M.D., and her therapist, Mr. Burke.

2

She argues that even if not accorded controlling power, their opinions should be given deference under 20 C.F.R. §§ 404.1527(d)(2), and 416.927(d)(2).

Dr. Younger began treating Houcks in October of 2001, finding that Houcks suffered from severe headaches, associated body pain and fibromyalgia.  (Tr. 281-82, 285-86, 354, 355, 361). The ALJ's decision to limit the impact of Dr. Younger's testimony centered on her determination in November of 2001 that Houcks should not limit her work activity.  (Tr. 361).

Houcks stresses that Dr. Younger's treatment notes during this period shows that she suffered from persistent physical examinations which confirmed a variety of problems, such as left-side numbness, bilateral muscle pain and tenderness, and restricted range of motion because of the pain. (Tr. 282, 285, 432). After two years, Dr. Younger concluded that Houcks would suffer from substantial difficulties in performing even simple work.  (Tr. 502).  She stated that she believed Houcks had probably been disabled since August of 2001.

Based on the testimony of the medical expert at the hearing, the ALJ determined that Houcks's mental impairment met the listed impairment as of January 6, 2003.  Prior to that time, he determined, it was not severe.  (Tr. 25).

Houcks argues that the ALJ should have determined that the mental impairment was severe since the alleged onset date, in that it caused more than a minimal restriction on her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  She stresses that under Social Security Ruling 83-20, 1983 WL 31249 (S.S.A.), an ALJ need not reach a listing severity before onset can be established.   She contends that her own testimony and the records from the treating psychiatrists show that her symptoms were present since Jun of 2001.

3

S.S.R. 83-20 provides:

In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

Houcks reported sleep difficulties, and memory and concentration problems in December of 2001. The next month, Dr. Younger wrote that Houcks's condition might be related to depression, and prescribed Remeron. (Tr. 355). Houcks was prescribed Depakote in April 2002. (Tr. 353). In July 2002, Dr. Younger described Houcks as very moody and tearful, with a depressed affect. (Tr. 432). Dr. Younger prescribed Serzone for "sleep and depression issues." (Tr. 432).

Dr. Younger referred Houcks to Midwest Psychiatric Consultants where she was seen on January 6, 2003 by Dr. Merritt, who noted that "Florence has had a lot of stress over the past year and a half." (Tr. 544). Dr. Merritt further noted that Dr. Younger began treating Ms. Houcks's depressive symptoms over a year ago. (Tr. 544). Dr. Merritt diagnosed Ms. Houcks with a probable mood disorder, and rapid cycling depression due to fibromyalgia and chronic pain, also secondary to the aneurysm. (Tr. 545). She assigned Houcks a GAF score of 35 to 40, indicating a major impairment in several areas, such as work, family relations, judgment, thinking, or mood. (Tr. 546). She noted that Ms. Houcks's GAF score over the past year was 40. (Tr. 543).

Dr. Mandel stated that Houcks would have difficulty working at a job on a sustained basis, because of her cognitive ability, stress tolerance, and socialization deficits. (Tr. 478). She wrote that Houcks appeared to suffer from mood disturbances, feelings of guilt, difficulties in thinking and concentrating, and decreased energy. (Tr. 476, 477). She also exhibited marked limitations in

4

concentration, persistence, and pace. (Tr. 479). Finally, he believed that Houcks's depressive symptoms had been present since June 2001. (Tr. 480).

The ALJ did not ignore the opinions of Mandel, Merritt, and Burke, but premised his conclusion that Houcks met the listed impairment based upon their opinions that she was disabled when he saw her on January 6, 2003.  The issue is whether the ALJ had a valid basis for discounting their additional opinion that Houcks's condition had been present prior to the time they saw her.

The ALJ noted the absence of evidence regarding the severity of Houcks's condition during the period prior to January 6, 2003, observing that there "were no medical records from a mental health professional" prior to that date.  (Tr. 25).

Under S.S.R. 83-20, the "starting point" for determining the onset date is the allegations of the claimant and the date she stopped working.  In this case, that was consistent with an early onset in 2001.   The Commissioner notes that in the October 2001 mental status examination by Dr. Younger, it was recorded that Houcks appeared "alert, attentive and cooperative with good motivation" and "appropriate" affect.  (Tr. 282). The medical expert testified that there was no evidence of any limitations in 2001 and 2002.  (Tr. 61-62).  With respect to Dr. Younger, the Commissioner stresses that Dr. Younger had declined to place explicit restrictions on Houcks when she saw her in November of 2001, stressing the subjectivity of her symptoms.

The court finds that the ALJ erred in failing to determine that Houcks did not suffer from a listed impairment since June of 2001. The court determines that additional fact finding would serve no purpose, and the court will reverse the decision of the Commissioner, remanding the case with directions to award disability to Houcks, based on the determination that the plaintiff-claimant has had a severe impairment since June 22, 2001. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th

5

Cir.1993) ("When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits.").

While there is indeed a paucity of medical records during the June, 2001 to January, 2003 period, the evidence nonetheless remains strong and consistent that Houcks suffered from a severe impairment during that period. The medical providers who saw Houcks in January of 2003, whose opinions the ALJ accepted as to Houcks's current and subsequent condition, also opined clearly that the same condition had existed since the onset date. No valid basis has been advanced for rejecting these consistent opinions. The opinions were not simply drawn out of the air, but were tied to a preexisting condition (Houcks's brain aneurism) which had occurred well prior to the onset date in 2001. The ALJ fails to explain how Merritt, Mandel, and Burke are convincing as to Houck's condition on and after January 6, 2003, but then lack any credibility as to the nature of her condition prior on January 5 or before.

The medical expert who testified before the ALJ did not examine Houcks during the relevant period and offered no substantial basis for disbelieving the opinions of the psychiatrists. Dr. Younger's conclusions are similar to those of the psychiatrists. While she initially demurred from determining that Houck was disabled based on her limited contact with the patient, she later determined that she was indeed disabled, and – as with the psychiatrists – linked that disability with a medical condition which preexisted the onset date.

The court finds that the ALJ erred in failing to apply S.S.R. 83-20 in that "the date alleged by the individual should be used if it is consistent with all the evidence available." The court's review of the record compels the conclusion that no meaningful inconsistency exists in the record

6

regarding the onset date of Houck's condition, and that the ALJ's determination of a later onset date is not supported by substantial evidence.

IT IS ACCORDINGLY ORDERED this 28th day of July, 2008, that the decision of the Commissioner is reversed, and the matter is remanded with directions to award disability to Houcks, based on the determination that the plaintiff-claimant has had a severe impairment since June 22, 2001.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE